# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERTRUDE CATHERINE FILIPOS, ) | |
| ) | No. 15 C 7719 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gertrude Catherine Filipos ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff filed a motion to reverse the final decision of the Commissioner, which this Court will construe as a motion for summary judgment [22], and the Commissioner has filed a cross-motion for summary judgment [28]. After reviewing the record, the court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

**I.      Procedural History**

Plaintiff filed a DIB application on April 20, 2012, alleging a disability onset date of February 25, 2009, due to lumbar degenerative disc disease. (R.163-69, 195.) Her initial application was denied on August 20, 2012, and again at the reconsideration stage on December 7, 2012. (R. 107, 121.) Plaintiff requested a hearing before an Administrative Law Judge

---

[1] [1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

("ALJ") on January 15, 2013, and the hearing was scheduled on December 19, 2013. (R. 40-94, 139.) Plaintiff appeared at the hearing with her attorney. (R. 40-94.) A medical expert ("ME") and vocational expert ("VE") also appeared and offered testimony. (*Id.*) On February 27, 2014, the ALJ issued a written decision denying Plaintiff's application for DIB benefits. (R. 22-34.) The Appeals Council ("AC") denied review July 15, 2015, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). (R. 1-3; *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II.    ALJ Decision

On February 27, 2014, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 22-34.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2015. (R. 24.) At step one, the ALJ determined that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since her alleged onset date of February 25, 2009. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of low back pain, history of lumbar fusion, and history of alcohol use. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 25.) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (R. 26.) The ALJ also found that Plaintiff's RFC was further limited to no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional kneeling, crouching, crawling, balancing, and stooping; only occasional overhead bilateral reaching; limited to frequent bilateral handling and fingering; no commercial driving; avoid even moderate exposure to vibration; no work at unprotected heights or around

hazardous machinery; must avoid concentrated exposure to temperature extremes, such as extreme heat, cold, or humidity; must work on a flat uneven surface; and must be allowed to alternate between sitting and standing at will, which does not take the individual off task. (*Id.*) At step four, the ALJ concluded that Plaintiff could not perform any of her past relevant work. (R. 32.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 32-33.) Specifically, the ALJ found that Plaintiff could work as an order clerk, circuit board tester, or charge account clerk. (R. 33.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (R. 33-34)

### III. Medical Background

Plaintiff was born August 10, 1970. (R,163.) She completed high school and attended about one year of college. (R,196, 643.) Before her ailments, Plaintiff worked as a residential real estate sales person, account manager, and corrections officer. (R. 185.) Plaintiff testified that she stopped working because she fell at work and injured herself. (R. 62.) Plaintiff has pain in her legs and back. (R. 216.) She also became depressed; on July 27, 2012, consultative psychologist, Dr. David NieKamp, Psy.D., completed a mental status evaluation. (R. 643-46.) Dr. Niekamp noted that Plaintiff's mood was stable and congruent, and that she was oriented times three. (R. 644.) Dr. Niekamp further noted that Plaintiff's memory and cognitive functions appeared to be intact, and that Plaintiff denied any significant symptoms commensurate with either depression and/or anxiety and not exhibit such symptoms during the interview. (R. 645.) Dr. Niekamp did not diagnose Plaintiff with a mental impairment and assigned Plaintiff a GAF Score of 65. (R. 645-46.)

Approximately one year later, on July 31, 2013, Plaintiff again sought mental health treatment for depression from Dr. Nicole Moses, M.D. (R. 749-51.) Dr. Moses noted that Plaintiff complained of feelings of hopelessness, worthlessness, anhedonia, and had trouble sleeping; and also noted that Plaintiff reported her father passed at the end of June.. (R. 749.) Dr. Moses indicated that Plaintiff's mood was dysthymic, unhappy, depressed, abnormal, somber, unhappy, sad, and tearful. (R. 750.) Dr. Moses prescribed Plaintiff Cymbalta, a depression medication. (R. 751.)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff asserts that the ALJ made four errors. First, Plaintiff argues that the ALJ's step two and three determinations were erroneous. Second, Plaintiff argues that the ALJ's RFC determination was erroneous. Third, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence. Lastly, Plaintiff argues that the ALJ's step five determination was erroneous. The Court finds that the ALJ's step-two determinations and RFC

assessment were not supported by substantial evidence. Because this conclusion requires reversal, the other alleged errors need not be addressed at this time.

**A.      The ALJ Failed to Properly Support her Step-Two and Step-Three Determinations with Substantial Evidence**

At step two, an ALJ must determine the medical severity of a claimant's impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); SSR 96-3p. At step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 404.1520(a)(4)(iii). An ALJ should identify the Listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ must also obtain the opinion of a medical expert on the issue. (*Id.*) The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545. In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. *See id.*

In this case, Plaintiff's RFC contentions are compelling. Throughout the ALJ's RFC analysis, she never mentioned how she accommodated Plaintiff's severe impairment of low back pain. Similarly, the ALJ neglected to mention how she accommodated or considered Plaintiff's "history of alcohol use" in her RFC findings. Because the ALJ found Plaintiff's low back pain to be a severe impairment, she was required to explain how she accommodated Plaintiff's low back pain in her RFC determination. *See* 96-8p; *Norris v Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). An ALJ is required to explain how she arrived at her conclusions regarding a [c]laimant's RFC." Further, without an adequate narrative discussion that includes Plaintiff's severe impairments of low back pain and history of alcohol use, the ALJ's analysis is perfunctory and

5

prevents this court from conducting a meaningful review. *See Briscoe* ex rel. *Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (holding an ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts). Therefore, the ALJ failed to provide the requisite substantial evidence to support her RFC finding.

Next, in rejecting a claim at step two, the Commissioner "may not properly find that a claimant has a certain capacity to perform work-related activities without the support of a physician's medical assessment." *Dunn v. Sullivan*, No. 90 C 4106, 1993 WL 730745, at *4 (N.D. Ill. Jan. 29, 1993). *See also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). An ALJ may not "play doctor" by using her own lay opinions to fill evidentiary gaps in the record. The ALJ noted that Plaintiff's medically determinable mental impairments of depression and anxiety considered singly or in combination, did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and were therefore non-severe. (R. 25.) The ALJ further noted that on "September 11, 2013, the claimant reported some anxiety and depression. However, the claimant was seeing a grief counselor related to her father's passing in June 2013," and that "[t]here was no indication of durational for 12 continuous months or that it is expected to last 12 continuous months." (*Id.*) The ALJ further attempted to discount Plaintiff's depression diagnosis by noting that "[t]he psychological consultative examination on July 27, 2012 revealed no diagnosis." (*Id.*)

There are several problems with the ALJ's analysis. First, Dr. NieKamp's July 27, 2012 mental evaluation was performed twelve months before July 31, 2013, the date Dr. Moses diagnosed Plaintiff with depression; however, the ALJ did not rely upon any other relevant medical report or opinion that was given around the time of, or subsequent to, Dr. Moses'

opinion. (R. 749-51.) Without such medical evidence, the ALJ impermissibly substituted her own medical opinion for that of a physician. Second, "an ALJ has a duty to fully develop the record before drawing any conclusions." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Regardless of the causation of Plaintiff's depression, she reported depressive symptoms on July 31, 2013 and was prescribed Cymbalta,[2] a psychotropic medication. (R. 751.) The ALJ was not allowed to disregard medical evidence that suggested a disability simply because the death of Plaintiff's father may have caused her depression, nor was she allowed to disregard the evidence simply because Plaintiff's depression was a fairly current diagnosis. If the ALJ had questions about the severity and current or expected duration of Plaintiff's depression, a more reasonable approach would have been to develop the record and order another evaluation by a consultative psychologist, as well as the required psychiatric review technique to assess the severity of Plaintiff's mental impairments.

Further, an ALJ may not "play doctor" by using her own lay opinions to fill evidentiary gaps in the record. *Boiles*, 395 F.3d at 425; *Chase*, 458 F. App'x at 557. Here, the ALJ admitted that there was medical evidence containing exhibits 18F through 23F that was submitted post hearing, and that based on her review of the evidence the records were generally consistent with the records reviewed by the testifying ME. In other words, neither the testifying ME nor any other medical expert reviewed the evidence concerning Plaintiff's mental impairments, and conclusions were improperly drawn by the ALJ. Moreover, the Commissioner admitted that the ALJ never asked the testifying ME about Plaintiff's mental impairments and that the ALJ relied on the mental evaluation of consultative psychologist Dr. NieKamp, when determining the

---

[2] Cymbalta is the "trademark for a preparation of duloxetine hydrochloride," which is "used for the treatment of major depressive disorder and the relief of pain in diabetic neuropathy." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited Jul. 25, 2016) [hereinafter *Dorland's* ].

7

severity of Plaintiff's mental impairments. (Def.'s Mem. at 7). Thus, without the required psychiatric review technique or at the very least a consultative opinion contradicting Dr. Moses' diagnosis of Plaintiff's depression, the ALJ failed to properly assess Plaintiff's mental impairments.

Because this conclusion requires reversal on the basis the ALJ did not properly consider and assess all of Plaintiff's impairments or RFC, Plaintiff's other alleged errors need not be addressed at this time. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken in completely re-evaluating Plaintiff using the sequential evaluation process.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

Date: 12/16/2016

U.S. Magistrate Jude, Susan E. Cox